# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

SMITH v. WORTHAM'S HEIRS AND ALS.

| 82 | 937 |
|----|-----|
| 110 | 68 |

FEBRUARY 25th, 1887.

Absent, LEWIS, P.

JUDICIAL SALES—*Caveat emptor*—*Case at bar.*—In a partition suit in 1858 land is sold to S., commissioner collects two-thirds of price, and in 1866 reports sale and collections. Sale is confirmed. Collections are ignored. Commissioner is directed to collect the whole. He never does it. In 1870 a creditor's suit, to which the heirs are not parties, is brought to enforce liens against purchaser. Bill alleges that S. bought the land in the partition suit, and that the vendor's lien for the balance has priority, and prays that the two suits be consolidated. Before the consolidation the vendor's lien is ascertained, and sale is ordered to pay it, and was made to E., who failing to pay, a resale was ordered and made in 1876 to Smith, who, at an advance, sold the land to Swisher. The latter, after paying part, stopped paying, because of a question as to his title, and deposited the money in court. In 1883, after the consolidation, it was decreed that unless the vendor's lien in favor of the heirs was satisfied within four months, the land in the hands of Smith, or his vendee Swisher, should be sold to satisfy it. From this decree Smith appealed.

HELD:

Swisher stands in Smith's shoes, and unless he is forced to pay more than the purchase money, he cannot complain. In this State the maxim, *caveat emptor* strictly applies to all *judicial sales.* The court undertakes to sell *only the title, such as it is,* of the parties to the suit, and it is the duty of the purchaser to ascertain for himself whether the title of those parties may not be impeached or superseded by some other and paramount title. *Long* v. *Weller,* 29 Gratt. 357.

VOL. LXXXII—118

Appeal from decree of circuit court of Amherst county, rendered at its October term, 1884, in the consolidated causes of *Wortham* v. *Wortham,* a suit for partition, and *Martin's Ex'or* v. *Shackelford,* a creditor's suit. The decree was adverse to H. E. Smith and his vendee, T. D. Swisher, and Smith obtained an appeal and *supersedeas.*

Opinion states the case.

*William Patrick,* for the appellant.

*R. Whitehead,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

It appears from the record that in the year 1858 Nancy Wortham died seized of a tract of land, containing about 220 acres, in Amherst county, Virginia, leaving as her heirs at law seven children, two of whom were infants and two were married women. The suit of *Wortham* v. *Wortham* was brought in the county court of Amherst county to sell this land for impracticable partition, in which all the said heirs at law and parties in interest are made properly plaintiffs or defendants. At the June term, 1858, of the said court, a decree was entered for the sale of the said land, and John D. Davis was appointed commissioner to make the sale ordered, and was required to report to court. Davis, commissioner, sold the land to R. D. Shackelford for $3,364.50 net, as of August 6th, 1858, for which he took bonds from the purchaser, Shackelford, with one John H. Burgess as security for the purchase money. Burgess was never sued because probably he was insolvent. Davis made no report of sale till August court, 1866, eight years after the sale, when he reported that he had, in 1859 and 1860, collected the first two bonds, except a small balance on the

second, without any authority of law or order of the court. The court confirmed the sale to Shackelford, but refused to confirm Davis' report, and made an order in the cause appointing him a receiver to withdraw the purchase money bonds, and "to proceed to collect the same," two of which he had already collected years before without shadow of authority. Davis gave bond, with sureties, now dead or insolvent or both, if not then, with condition to indemnify Shackelford, the purchaser, against all loss or damage for Davis' illegal and unauthorized collection, and Shackelford's payments to him of the two bonds; and the court referred the cause to a master commissioner to ascertain what sums Shackelford had so illegally paid to Davis.

The cause was removed to and docketed in the circuit court of Amherst county at the August term, 1868, and nothing more was ever done in it till October, 1882, when the petition of the heirs-at-law, the appellees, was filed by James D. Wortham, Charles E. Wortham, James C. Tinsley, and Mary, his wife, the heirs of Sarah Parks, and the heirs of Francis D. Eubank, who married R. H. Eubank, representing five of the seven children of Nancy Wortham, deceased. The said petition states that James D. Wortham and Tinsley and wife had removed to Texas in 1848; that Charles E. Wortham lived in Richmond, Virginia; that the Parks children lived in Texas, to which State their parents removed in 1858; and that the children of Mrs. Eubank reside in Amherst county, one of whom was a married woman at that time, and the others infants then (1882). No other proceedings were had in this cause of *Wortham* v. *Wortham.* In February, 1870, the executrix of John S. Martin, claiming to be a judgment creditor of Shackelford, filed her bill to subject his real estate to the payment of the liens upon it, and states in her bill that one tract was purchased by the said Shackelford in the cause of *Wortham*

v. *Wortham,* then pending in the said circuit court of Amherst, in which her said suit was then instituted, and alleges that an unpaid balance of purchase money is due by Shackelford, the purchaser, and that whatever amount or unpaid balance aforesaid is due in the suit of *Wortham* v. *Wortham* has priority over her said judgment; and she prays that the said suit of *Wortham* v. *Wortham* may be united and heard with her case. She makes only Shackelford and Davis parties to that suit. The said two causes were not so united until October, 1883.

At the March term, 1879, the cause of *Martin* v. *Shackelford* (not then united or heard with *Wortham* v. *Wortham*) was heard, and was referred to a master to take sundry accounts: (1) An account of the purchase money due from Shackelford for the 220 acres of land sold in the suit of *Wortham* v. *Wortham,* and bought by him August 6, 1858. The commissioner returned his report prior to the September term, 1870. It does not appear that any of the Wortham heirs had notice either by service or by publication. He reports the last purchase-money bond of Shackelford unpaid, credits it by certain rents collected under the order of court to rent the land out, and reports a balance due of $1,244.71, as of August 1, 1870. This report was confirmed without any inquiry or ascertainment whether Davis had ever paid any heir one cent so as to indemnify Shackelford, the purchaser, and so far to release the land from the vendor's lien of the Wortham heirs. At that term, September, 1870, the court decreed a resale of the land for the reported unpaid balance of the purchase money due upon the last bond of Shackelford, the purchaser, and appointed as commissioners to make the sale Taylor Berry, counsel for Miller, one of Shackelford's creditors, and also counsel for Dameron, the alleged assignee of R. B. Wortham and S. R. Wortham, and J. T. Brown, counsel for Martin's executrix. They made sale to R. H. Eubank (who married one of the

Wortham heirs) September 1, 1871, for $2,400, on one, two, three, four, and five years' credit; and, after taking off expenses, took his five bonds for $460 each, making $2,300. At the September term, 1871, this sale was confirmed, but Eubank failed to pay the purchase money, and at the October term, 1875, a decree was rendered directing the same commissioners to resell the land. On the 16th day of October, 1876, they sold the land to H. E. Smith, the appellant, at the price of $1,852, which sale was confirmed by the court. Smith sold the land to one Swisher at a profit of $671.96, and Swisher made payments on it to the commissioner or receiver appointed by the court to collect the fund of purchase money from Smith, until he stopped payment on account of a question as to his title, leaving a balance due by him to Smith, his vendor, of $1,432.15, as of October 13, 1884; he having given his bond to Smith for the profit made by Smith of $671.96.

At the April term, 1877, a decree was entered in the cause of *Martin* v. *Shackelford,* based on an *ex parte* statement of Martin's counsel, which statement admits and fixes the vendor's lien for unpaid purchase money as due to the "Wortham heirs" for the sum of $1,721.34, as of September 1, 1877; and yet the said decree utterly ignores the Wortham heirs, and dispenses the said purchase-money balance of $1,721.34 among Shackelford's creditors, although the bill filed in *Martin* v. *Shackelford* referred to the pending cause of *Wortham* v. *Wortham,* admitted that the unpaid purchase money due by Shackelford is the prior and paramount lien due to the Wortham heirs, and claims that only the balance, if any, after satisfying that lien, is amenable to Shackelford's creditors. The vendor's lien belonged to the seven Wortham heirs, as follows: James D. Wortham, Charles E. Wortham, Mary L. Tinsley, Sarah Jane Park's heirs, R. H. Eubank's children, as heirs of their mother, Eubank being himself a debtor and defaulting purchaser of

the land; S. R. Wortham, security for John D. Davis, and B. R. Wortham, security for R. H. Eubank and John D. Davis. The purchase money due by Shackelford, the purchaser of the Wortham land at the sale for partition, in *Wortham* v. *Wortham,* is $6,367.57, unpaid, or illegally paid by Shackelford to Davis. One-seventh is $909.65, four-sevenths is $3,638.60, and five-sevenths, including the share of Eubank's children, is $4,548.25. So all the money due by Smith, the purchaser of the land in the cause of *Martin's Ex'x* v. *Shackelford,* ascertained and reported in the cause as a balance, was $2,164.50, with interest on $1.121.50 from April 1, 1884, will not pay the shares of the five stocks (appellees) of the Wortham heirs, who have never been paid anything whatever, and who are not indebted to the fund as sureties for defaulting purchasers, or for Davis, the unauthorized receiver of the proceeds of the two first purchase-money bonds from Shackelford.

In October, 1883, the cause of *Wortham* v. *Wortham* was united with the cause of *Martin* v. *Shackelford,* and in October, 1884, the two causes were heard together, when the circuit court decreed that the land sold to R. D. Shackelford, in the partition suit of *Wortham* v. *Wortham,* is bound by the vendor's lien, in favor of the Wortham heirs, in the hands of H. E. Smith, or his vendee, T. D. Swisher, and that unless the said Smith or Swisher, or some one for them, shall pay to Taylor Berry, the receiver in the case, in four months from the rising of the court, the sum of $2,164.34, with interest on $1,121.50, part thereof, from April 1, 1884, and the costs, then that the land in the bill and proceedings mentioned should be sold, etc.; and the decree gave leave to T. D. Swisher to withdraw the money deposited by him to the credit of the cause of *Martin's Ex'x* v. *Shackelford.* From this decree Smith appeals.

Swisher, Smith's vendee, is not an appellant. He stands in Smith's shoes. If he be not forced to pay more than his pur-

chase money, he cannot be hurt, nor can he complain. By a report of the master of accounts made in the causes consolidated May 28th, 1884, the amount of Shackelford's last bond for unpaid purchase money is ascertained and accepted by the court as $2,164.34, as of April 1st, 1884, and this is made the basis of the decree. The unpaid purchase money due by Smith amounts to more than the sum decreed to be paid.

It is admitted, and the record shows plainly, that the appellees (or any of the Wortham heirs) were never made parties to the suit of *Martin's Ex'x* v. *Shackelford,* and that· they (the appellees) have never received or been paid any portion of their shares of the proceeds of the sale of their land in the suit of *Wortham* v. *Wortham.* They cannot be bound, nor their interest affected, by any decree or proceeding in the suit of *Martin's Ex'x* v. *Shackelford* prior to the consolidation of the two causes in October, 1883. If the receivers and purchasers have made illegal and unauthorized payments of *their money* to the *junior* creditors of Shackelford, or to any one else, it is not the fault nor the misfortune of the appellees, who, as *five* of the *seven* Wortham heirs, are holders of the vendor's lien, and entitled to receive (as they say in their petition they are willing to do) the unpaid purchase money due by Smith for their land, sold in the cause of *Martin's Ex'x* v. *Shackelford,* to which they were not parties, or, in denial or default thereof, to subject the land. Smith and his vendee, Swisher, were bound to know of their title and unpaid interests as shown by the record under which they purchased. Smith held no title when he sold to Swisher. Smith has paid nothing, and Swisher, his vendee, still owes more of his agreed purchase money than the reported balance unpaid by Shackelford, the purchaser of the land in the suit of *Wortham* v. *Wortham.* Neither Smith nor Swisher allege or pretend that the appellees, or any of them, are indebted to them in anywise; and it is nowhere alleged in

the record that they have ever been paid or have received any portion of the proceeds of the sale of their inheritance by any one, either purchaser or receiver, in either cause. The appellees, mostly non-resident heirs—women and children in part —are entitled to the sum decreed to be paid to them, to the exclusion of the two Worthams—R. B. Wortham and S. R. Wortham—and Eubank's curtesy, as they are bound as sureties, and responsible for the whole loss occasioned to the fund of purchase money by the default of the commissioner, Davis, and the receiver, and purchasers of the land. Even this, when paid to them, either by sale of the land in the possession and enjoyment of Smith, or his vendee, Swisher, or by them in relief of the land, will be less than one-half of their entitled inheritance in the land; but as, because of death and insolvency of Shackelford and his sureties, and Eubank and his sureties, and Davis and his sureties, the land is all they can look to, they have declared their willingness to accept the sum decreed in exoneration of the land from their vendor's lien, and to abide by the decree of October, 1884, appealed from by Smith. If the appellees are willing, as they say, to abide by the decree of October, 1884, under which they do not get one-half they are entitled to, certainly Smith, the appellant, cannot complain, whose duty it was to investigate the title to the land before he bought it; and who can now, by paying less than the balance of his purchase money to the appellees, exonerate the land in the hands of his vendee, Swisher.

The inheritance of the appellees, representing five stocks of the Wortham heirs, cannot be taken from them except by due process of law; and all the proceedings in the suit of *Martin's Ex'x* v. *Shackelford*, to which they were not parties, and under which their land was sold, and bought first by Eubank, and then by Smith, are *extrajudicial*, inoperative, and void as to them. Their paramount and prior right was duly reported

and recognized in the bill, and all the proceedings in the suit of *Martin's Ex'x* v. *Shackelford,* in which suit Smith purchased the land; and it matters not that the sale of the land in *Martin* v. *Shackelford* was made more than six months after the decree in that suit, to which the appellees were not parties, and with which the cause of *Wortham* v. *Wortham* was not then in any way connected or related; the two suits being united in 1883, seven years after the sale to Smith, in a suit which expressly recognized the vendor's lien, as reported, outstanding and due to the Wortham heirs, which was notice to Smith and all comers into that cause.

In *Long* v. *Weller*, 29 Gratt. 35, it is said: "In Virginia the maxim, *caveat emptor*, strictly applies to all *judicial sales.* The court undertakes to sell *only the title, such as it is,* of the parties to the suit, and it is the duty of the purchaser to ascertain for himself whether the title of these parties may not be impeached or superseded by some other or paramount title."

The vendor's lien due to and outstanding in the Wortham heirs was distinctly known and admitted in the suit of *Martin's Ex'r* v. *Shackelford;* and a report of the commissioner of accounts made in the two causes, united May 28th, 1884, showed palpably that the judgment creditors of Shackelford were not entitled to be paid one cent until the parties entitled to the vendor's lien were paid. Smith owed the purchase money, and it was and is no concern of his how and in what proportions the purchase money, when paid into court, from whom he bought the land, shall be distributed among those entitled to the vendor's lien upon the land.

The decree appealed from is right, and must be affirmed.

RICHARDSON, J., dissented.

DECREE AFFIRMED.